IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| BART HAWK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 07-6043-CV-SJ-DW |
| TOM OSBORN and CRESTON LIVESTOCK AUCTION, INC., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Before the Court is Defendant Creston Livestock Auction, Inc.'s ("Creston") Motion for Summary Judgment. (Doc. 25). For the reasons stated below, the Court hereby GRANTS the Motion.

**Facts**

On December 17, 2003, Plaintiff Bart Hawk was injured while helping his neighbor, Max Dawson, load livestock onto a stock trailer. Defendant Tom Osborn ("Osborn") operated the trailer. Tom Osborn worked for Defendant Creston Livestock on December 17, 2003, from 12:00 p.m. to 6:32 p.m. The heart of this summary judgment is when the accident occurred and whether, regardless of the time, Defendant Osborn worked for Defendant Creston.

**Standard**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law. See Fed. R. Civ. P. 56. Issues of fact must be material to a resolution of the dispute between the parties; where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgement is appropriate. Case

v. ADT Automotive, 17 F. Supp. 2d 1077 (W.D. Mo. 1997), citing Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must deny the motion, regardless of the non-moving party's response, if the moving party fails to meet its initial burden. Id.

Once the initial burden is met, the burden shifts to the nonmovant to set forth specific facts by affidavit or other evidence showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Nonmovant may not rest on the mere allegations of its pleadings. Id. It is the court's obligation, however, to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences.

**Analysis**

Plaintiff claims Creston is liable under the doctrine of respondeat superior. To prove liability on respondeat superior, Plaintiff must present evidence that a master-servant relationship existed between Defendant Creston and Defendant Osborn. Wilson v. United States, 989 F.2d 953, 958 (8th Cir. 1993). In determining whether a master-servant relationship exists, the Missouri courts consider the factors listed in the Restatement (Second) of Agency:

    1. the extent of control the principal may exercise over the work,

    2. whether the servant is engaged in a distinct occupation or business,

    3. whether the work is usually done under an employer's supervision or by a specialist without supervision,

    4. the skill required,

5. who supplies the instrumentalities, tool, and location for doing the work,

    6. the length of the relationship,

    7. method of payment,

    8. whether the work is part of the principal's normal activities,

    9. the parties' intent, and

    10. whether the principal is or is not in business.

United States v. Baby-Tenda Corp., 2007 U.S. Dist. LEXIS 63110, 7-8 (W.D. Mo. 2007). "At all times, however, 'the touchstone is whether the party sought to be held liable has the control or right to control the conduct of another in the performance of an act.'" Id., *quoting* J.M. v. Shell Oil Co., 922 S.W.2d 759, 764 (Mo. 1996) (en banc); Wilson v. United States, 989 F.2d 958 (the test is whether Defendant Creston "had 'the right or power to control and direct the physical conduct of the other in the performance of the act.'").

    Plaintiff presents evidence primarily related to two factors: control and intent to create a master-servant relationship.

    Plaintiff argues that the first factor "extent of control" weighs in favor of a finding of liability since Defendant Creston "told Osborn where to go, when to be there, and where to deliver the livestock." Plaintiff's support for this argument is that Defendant Osborn was directly contacted by Defendant Creston to pick-up the cattle. This alone, however, is insufficient to raise a genuine issue of material fact. While the phone call from Creston shows that Creston conveyed the time and location of the haul to Osborn, it was Defendant Osborn and Max Dawson who determined the details of how the cattle was loaded and hauled.[1] See Kaplan v. U.S. Bank, N.A.,

---

[1] Plaintiff himself admitted that Max Dawson hired Defendant Osborn. While he submitted a later contradictory affidavit, he did not provide a sufficient explanation as to the contradiction with the earlier testimony and thus his later affidavit is insufficient to create a

166 S.W.3d 60, 68 (Mo. Ct. App. 2003). Additionally, it was Mr. Dawson, and not Creston, who chose Osborn as the hauler and asked Plaintiff to aid in loading cattle. The only point at which Defendant Creston controlled the details of Defendant Osborn's work was when he finally reached the auction site. Accordingly, the first factor weighs against a finding of a master-servant relationship.

Plaintiff also argues that the parties clearly intended to create a master-servant relationship since "Osborn was 'clocked in' as an 'employee' at the time of the incident." While both parties agree that Osborn clocked in for Creston at noon, they debate whether the accident occurred before or after noon and thus while Osborn was working for Creston. The only piece of relevant evidence Plaintiff presents is testimony by Tracy Constant, a witness to the accident. Mr. Constant testified, however, that he did not remember what time the accident occurred and it was "somewhere around noon or a little after, I don't really remember when it was." This evidence stands in contradiction to the rest of the record, including testimony from Plaintiff,[2] that the accident occurred prior to noon. While the Court must view the facts in favor of movant and draw all reasonable inferences therefrom, movant must create a genuine issue of an alleged factual dispute and not the mere existence of one. Scott v. Harris, 127 S. Ct. 1769, 1776 (U.S. 2007). Accordingly, Plaintiff has not created a genuine issue as to whether the accident occurred while Defendant Osborn was a paid employee for Defendant Creston.

A review of the record also shows that there is no genuine issue as to the remaining

---

genuine issue of material fact. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (U.S. 1999); Menz v. New Holland North America, Inc., 2007 U.S. App. LEXIS 26376 (8th Cir. 2007).

[2] October 16, 2006 Depo. Testimony of Barton Hawk p. 16 ("About what time did this incident happen? Approximately 9:30 to 10 in the morning.").

factors. Defendant Osborn's business is independent of the auction and is conducted without any supervision by Defendant Creston. Defendant Osborn supplied the truck utilized for hauling the animals. Finally, Defendant Creston's time records for Defendant Osborn only began once his truck and the cattle reached the auction center. Prior to that point, neither party considered themselves to have a working or compensable relationship.

    For the reasons stated above, Plaintiff has failed to create a genuine issue as to whether Defendant Creston is liable for the actions of Defendant Osborn. Accordingly, summary judgment is proper as to the claims against Defendant Creston and Defendant Creston's Motion is GRANTED.

Date:   December 20, 2007                            /s/ Dean Whipple
                                                                        Dean Whipple
                                                           United States District Judge